#4 31599.086
Lompoc FCI
3600 Guard Road
Lompoc, CA 93436

**FILED**

JUN 08 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### AT FRESNO

T: 1 6 CV 0 0 0 7 9 4    BAM PC

| | |
|---|---|
| EMIEL A. KANDI,<br><br>              Plaintiff-Movant,<br><br>    v.<br><br>MANAGEMENT AND TRAINING<br>CORPORATION, SCOTT MARQUARDT<br>CRAIG APKER, DALE PATRICK,<br>J. BERNAL, D. HUNT, R.<br>DUNHAM, BURNETT RUCKER, B.<br>PAIT, (?) MORSETH, DOES 1-9,<br><br>              Defendants. | No._____<br><br>**VERIFIED COMPLAINT AND<br>PETITION FOR RELIEF PURSUANT<br>TO 28 U.S.C. § 2241 AND<br>42 U.S.C. § 1983** |

Comes now the Movant, Emiel A. Kandi, herinafter "Movant" appearing in propria persona and In Forma Pauperis, pursuant to the applicable Federal Rules, statutes and common law, for and in support of his Verified Complaint and Petition for Relief pursuant to 28 U.S.C. § 2241 and 42 U.S.C. § 1983.

Movant alleges and asserts that he has been harmed by an on-going and unlawful civil conspiracy perpetrated by the Management and Training Corporation and its officers and employees, hereinafter "Defendants'".

1

Plaintiff asserts that Defendants' violated his First, Fifth, Sixth, Seventh, Eighth, and Fourteenth Constitutional Amendment Rights to free speech, legal redress, access to the courts, false imprisonment without authority, religious discrimination, retaliatory transfer to inhibit legal action and willful denial of medical care and varying standard of medical care between inmates with similar conditions.  These and other injuries are described further herein.

### PARTIES, JURISDICTION AND VENUE

(1) Movant is Emiel A. Kandi, Register No. 43159-086.  Movant is currently incarcerated at Lompoc Federal Correctional Institution with a mailing address of 3600 Guard Road, Lompoc, CA, 93436.  Movant was formerly incarcerated at Taft C.I., operated by Defendants' until he was transferred to Lompoc FCI in retaliation for utilizing the written staff correspondance procedures to address greivances.

(2) Defendant One (1) is Management and Training Corporation, a privately owned contractor for the United States Bureau of Prisons and is based out of Centerville, Utah.  Management and Training Corporation or "MTC" operates Taft Correctional Institution at 1500 Cadet Road in Taft, CA 93268.  MTC is a private entity and is not entitled to qualified immunity as the United States Bureau of Prisons would be.  MTC is acting under the color of law but is not in fact a governmental entity.  MTC is a Deleware corporation.

(3) Defendant Two (2) is Scott Marquardt, President and CEO of

2

MTC  and is himself a J.D.  Mr. Marquardt is an educated and knowledgable leader and either knew of, or should have known of, the abuses and usurpation of authority that were being committed by his agents and employees on his behalf and on behalf of his company under a Respondeat Superior doctrine. Previous case law indicated that Mr. Marquardt is indeed aware that his company does not have the legal authority for many of the actions that his silence and inaction grant aquiesence to and which deprive prisoners of many constitut-ional rights.

(4) Defendant Three (3) is Warden Craig Apker.  Warden Apker is in charge of the day to day operations of Taft C.I. and is known personnally to the Movant.  The Movant has correspond-ed a great many times with Warden Apker and spoken face to face with him regarding many of the issues addressed in the administrative remedy process.  Warden Apker's refusal to take action and/or willful disregard for Movant's rights and his employees malfeasant actions makes him a knowing  and culpable participant in the civil conspiracy and related harms committed on the Movant.

(5) Defendant Four (4) is Dale Patrick the grievance and legal coordinator at Taft C.I.  Mr. Patrick was a primary actor in all facets of the administrative remedy process at Taft C.I. and in the willful denial of access to the courts and a pri-mary actor in blocking Movant's access to his private legal counsel.

3

(6) Defendant Five (5) is J. Bernal (First name unknown).  J.
Bernal is the Unit Manager for Taft C.I. Camp and was a pri-
mary actor in the civil conspiracy against Movant.  J. Bernal
issued unlawful discipline to Movant, falsely imprisoned
Movant and attempted confiscation of Movant's legal papers
knowing full well that he did not have the legal authority
to perform those actions based on previous court rulings.
J. Bernal was also responsible, on behalf of MTC, for the
retaliatory transfer of Movant to a higher security facility
and away from a camp environment despite Movant not qualif-
ying as a sufficient security risk to warrant such a transfer
to a facility with more dangerous offenders.

(7) Defendant Six (6) is D. Hunt (First name unknown).  D. Hunt
is a "Sergeant" privately employed by MTC.  He was respons-
ible for placing Movant in the Special Housing Unit by way
of request to his supervisors and for violating Movant's
H.I.P.P.A. medical privacy rights.  D. Hunt is also respons-
ible for covering up and protecting MTC employee R. Dunham's
violation of Movant's First Amendment religious freedoms and
worked in conspiracy with R. Dunham to remove Movant from
the Taft Camp and place him illegally into the Special Hous-
ing Unit a.k.a. the SHU.

(8) Defentand Seven (7) is R. Dunham (First name unknown).  R.
Dunham is the horticulture supervisor for Taft C.I. and was
active with J. Bernal and D. Hunt to unlawfully punish Mov-
ant and R. Dunham was responsible for violating Movant's

4

medical restrictions and causing further injury despite hav-
ing been warned in advance of Movant's lower back condition.
R. Dunham was openly hostile, made direct threats and was a
driving force behind Movant's retaliatory transfer.  R.
Dunham openly made derogatory comments about Movant to his
class which consisted of other inmates and was disrespectful
of Movant's religious practices and designated worship days.

(9) Defendant Eight (8) is Dr. Burnett Rucker.  Dr. Rucker is
the Medical Director at Taft C.I. and is responsible for all-
owing interference in a doctor-patient relationship by untr-
ained outside MTC executives, allowing staff to violate
H.I.P.P.A. privacy laws, and creating a varying standard of
care wherein prisoners received different allowable treat-
ment for similar conditions.

(10) Defendant Nine (9) is B. Pait (First name unknown).  B. Pait
was the Movant's counselor at Taft C.I. and was responsible
for the denial of access to the courts, denial of access to
Movant's attorney, and was an active participant in the
civil conspiracy to initiate a retaliatory transfer of the
Movant and to inhibit Movant's filing of this complaint for
violation in the standard of care due to inmates.

(11) Defendants' Ten to Nineteen, a.k.a. Does 1-9, are MTC empl-
oyees which may become known to be a part of the civil con-
spiracy through discovery at a later date.

Jurisdiction and venue are proper in United States District
Court for the Eastern District of California at Fresno as Movant

was incarcerated at Taft C.I. in Kern County, CA at the time the violations occurred and all of the Defendants' work at the Taft C.I. facility located in that district.   Jurisdiction is also proper in a Federal venue because MTC/Taft is a privately run contract facility operating under the "color of law" and under agreement with the U.S. Bureau of Prisons.   Jurisdiction is also proper because Movant is a Federal prisoner and the violations alleged are of a constitutional nature.   No state has jurisdiction in this case.

## JUDIICIAL INTERPRETATION AND CONSTRUCTION

The Movant is filing his Verified Complaint and Petition for Relief in propria persona, or pro se.   Being of limited means due to current Federal incarceration the Movant is Dependant on the court for the liberal interpretation and construction of the Verified Complaint and Petition for Relief that is due a pro se litigant.   It is incumbant on the Court to review the facts, remedies sought, and apply the appropriate rule, statute, common law remedy, or constitutional right as the facts and requested relief dictate.   See:   United States v. Young, 936 F. 2d 1050 (9th Cir. 1991); and Haines v. Karner, 404 U.S. 519, L. Ed. 2d 652, 92 S. Ct. 594 (1974); and Hebbe v. Pliler, 627 F.3d 338-42 (9th Cir. 2010)

## STATEMENT OF ISSUES

(1) Whether or not a privately owned and operated contract facility has the legal authority to issue ANY disciplinary sanctions to an inmate.

(2) Whether or not a privately owned and operated contract

6

facility has the legal authority to operate and maintain a
Special Housing Unit or "SHU".

(3) Whether or Not MTC staff's actions constituted a civil con-
spiracy that violated any of Movant's Constitutional or Civil
Rights.

(4) Whether or not Movant's security points and/or camp status
was altered by MTC staff improperly as they lacked authority
to make such a disciplinary determination or issue sanctions.

(5) Whether or not MTC staff denied Movant his constitutionally
protected legal access to the law library, his attorney's and
to the courts and caused actual injury to Movant's existing
litigation and unjustly delayed Movant's filing and responses
to court orders.

(6) Whether or not MTC staff prevented Movant from practicing his
chosen religion and violated the Religious Land Use and
Institutionalized Persons Act and Religious Freedom Restor-
ation Act.

(7) Whether or not Movant was falsely imprisoned by MTC in the
Special Housing Unit at MTC by contract employees who lacked
the legal authority to operate a SHU.

(8) Whether or not MTC staff's actions and policy of emotional
distress and sleep deprivation amounted to effective and ill-
egal torture of SHU inmates.

(9) Wheter or not MTC and its medical staff violated Movant's
H.I.P.P.A. privacy and denied Movant necessary medical treat-
ment while also denying Movant allowance to pursue outside

7

medical treatments while allowing those exact same types of remedies for other inmates.

(10) Whether or not MTC and its employees transferred Movant to another higher security facility and altered Movant's security points in retaliation for Movant utilizing the administrative remedy procedures as outlined in the MTC handbook.

## STATEMENT OF FACTS

(1) Movant is a white collar, non-violent, first time offender with no criminal history and no history of violence. Movant entered Taft C.I. with ZERO security points.

(2) On November 15th, 2016, Movant self surrendered to Taft C.I. as directed by the U.S. Bureau of Prisons.

(3) On February 25th, 2016, Movant was issued an incident report or "shot" by J. Bernal for refusing to work. The shot was made to Movant during hours that were not his regular work hours. The shot was issued for a reason that was not put into writing in any handbook, manual or policy and was not verbally conveyed to Movant. The shot is fully described in the exhibits.

(4) On February 29th, 2016, Movant was subjected to a Unit Disciplinary Committee or "UDC" hearing comprised entirely of privately employed MTC staff. No Bureau of Prisons employees were present at the UDC and no B.O.P. certification was ever issued about the UDC findings. The UDC did not read, investigate or give any more than a cursory glance at Movant's prepared written statements. The UDC outcome was predetermined.

8

(5) The UDC of February 29th, 2016 gave Movant the disciplinary sanction of the loss of his orderly job and fired Movant. This was the first issuance of a disciplinary sanction to Movant by a non-Bureau staff person and was unlawful.

(6) Approximately fifteen (15) minutes later Movant was reassigned to a new job in the horticulture department that did not take Movant's religious schedule or medical restrictions into account. Movant was assigned to supervisor R. Dunham, who is widely known for his propensity for ruthless and arbitrary discipline, occasional racist statements, and rude behavior toward the inmate population. Job assignments normally take time, up to several weeks, and the sudden swiftness of Movant's job loss and subsequent reassignment was both pre-planned and injurious to Movant. Movant was given no meaningful opportunity to appeal the transfer.

(7) On or about March 1st, 2016, Movant began his official administrative remedy appeal process to appeal the UDC decision and the results of the sanctions and also made a complaint against unit manager J. Bernal who issued the arbitrary shot for an uncodified policy.

(8) On or about March 1st, 2016, Movant underwent his new orientation with supervisor Dunham. Plaintiff verbally advised Mr. Dunham of his pending appeal to regain his previous job and also advised Mr. Dunham of his medical restrictions.

(9) Plaintiff participated in his new job in good faith but refused to sign the job description paperwork due to his pend-

9

ing appeal.   Mr. Dunham later called Movant into his office
and irately threatened Movant and told Movant that if Mov-
ant did not sign the papers immediately he would issue a shot
to Movant for a 306 violation, refusing to work.   Movant sig-
ned the papers under duress and under threat of disciplinary
action and noted that next to his signature on March 1st,
2016, at 13:59 Pacific Standard Time.

(10) On or about March 1st, 2016, Movant filed an additional com-
plaint against supervisor Dunham and sent a sensitive BP-10
appeal to the Region 9 Director of the B.O.P. pursuant to
28 CFR § 542.14(d).

(11) On March 2nd, 2016, Movant was placed on temporary medical
unassignment.   Before Taft medical staff evaluated Movant
Sergeant D. Hunt spent approximately fifteen (15) minutes
discussing Movant's situation with medical staff without
Movant being present.   Movant personally witnessed this con-
versation as Movant was in the medical lobby and the lobby
has a glass door.   Sergeant D. Hunt and Taft medical staff
violated Movant's H.I.P.P.A. privacy rights as D. Hunt is not
medical staff and Movant's situation did not involve instit-
utional security.

(12) On or about March 7th, 2016, Movant filed a combined compla-
int against both supervisor R. Dunham and unit manager J.
Bernal which is detailed in the exhibits.

(13) MTC / Taft C.I. supposedly opened an official complaint
against Bernal and Dunham but then immediately closed it

10

stating that both employees would be investigated by either the Taft Special Investigative Service or by the Bureau of Prisons but that no further information would be provided to Movant regarding the complaint.  Movant was effectively barred by MTC from any further higher level administrative remedies.  MTC confiscated all copies of the documents submitted with the complaint and no action has been taken to date.

(14) Movant was reassigned back to supervisor Dunham after he was taken off of medical unassignment.  By this time Movant had been threatened by and injured by supervisor Dunham and Movant refused to work for Mr. Dunham after his incident.  A UDC headed by J. Bernal found Movant guilty of not appearing for work and issued a disciplinary sanction for sixty (60) days loss of phone privileges.  Movant was placed into the SHU on March 9th, 2016.  Movant objected to this placement and signed all documents "under duress".

(15) Case law has shown, and Defendant MTC has previously made testimony in other cases, that MTC is NOT the Bureau of Prisons and its employees are NOT B.O.P. employees.

(16) All of the disciplinary actions and sanctions issued by MTC's privately employed contract staff are unlawful.  Only B.O.P. staff have the legal authority to issue disciplinary sanctions of any type.

(17) 28 CFR § 541.20 states:  "This subpart describes the Federal Bureau of Prisons' (Bureau) operation of special housing units (SHU) at Bureau institutions.  The Bureau's operation

11

of SHU's is authorized by 18 U.S.C. 4042(a)(2) and (3)."
Private contract facilities are not mentioned in the CFR.
Movant asserts that MTC and its employees do not have the
authority to operate the SHU as MTC is not the B.O.P.

(18) Since being placed into SHU custody Movant has been totally
denied legal access.  Movant has repeatedly written to staff
at all levels asking for his legal phone calls with his att-
orney but staff refused to cooperate and would not allow
Movant to call out to his attorney.

(19) SHU guidelines, as printed by MTC, state that "legal materi-
als will be delivered each weekday."  The MTC handout was
altered after Movant began complaining as noted in the exh-
ibits.  The MTC education department was only servicing the
SHU once a week until Movant began complaining in writing and
then they increased their service to two days a week, nowhere
near their posted regularity.  Movant request specific and
numerous legal materials and B.O.P. policies and most req-
uested items were never delivered.  Staff correspondance was
often not returned when CFR or B.O.P. policies were reqest-
ed.  Only once did Movant receive a section of the CFR as
requested and the one form given to Movant gave Movant the
incorrect address for the court.  Movant's § 2241 motion was
returned to him unfiled due to Taft's willful mistake.

(20) On or about April 18th, 2016, Movant was summoned by J.
Bernal and told that Movant was to be transferred to a high-
er security facility and was being refused camp status.

12

Movant was kept in the SHU an additional seven days AFTER
his disciplinary segration had been served in full.  The
form granting the extra detention stated that the reason that
Movant was a security threat was "because inmate Kandi has
completed his disciplinary segregation."  Movant was punish-
ed further and the reason for the new punishment was that
Movant had completed his punishment.

(21) At all times while in the SHU Movant was engaged in civil
litigation in Federal court and was attempting to complete a
Motion for Sentencing Correction for his criminal conviction.
Defendants' refusal to allow law library access, refusal to
deliver legal materials, refusal to allow attorney phone
calls and refusal to allow inmate legal assistance has caus-
ed serious and possibly irreperable and actual damage to
Movant's civil litigation against Heritage Financial Corp-
oration.  Defendants' were THE reason and causal factor in
Movant's inability to conduct legal research and seek rep-
lacement counsel in a timely fashion to comply with the
court order in his case.  Movant has sustained actual injury
to his legal cases that will have real and lasting financial
effect, constituted a taking of property, a violation of
Movants right of access to the courts, and will most likely
have a detrimental effect on the determination of Movant's
duration of continued incarceration.

(22) Movant has now been redesignated as a "low" security inmate
from previously being designated as a "minimum" security

13

camper and has been transferred from Taft camp to Lompoc's "Low" security facility in retaliation for utilizing the administrative remedy process to address staff grievances.

(23) During Movant's residency at Taft C.I. Movant was denied his religious access to smoking tobacco, his religious garden was uprooted, his supervisor refused to allow Movant to observe his designated religious service day, Movant was not allowed religious items that are a part of his faith and was not allowed any opportunity to utilize existing B.O.P. policy to introduce new and unfamiliar religious practices to Taft C.I. in a proper format for review. Movant was effectively denied the proper administrative format and was told that his issues did not concern the B.O.P.

(24) During Movant's residency at Taft C.I. the horticulture supervisor R. Dunham violated Movan't religious garden and the incident was covered up by Sergeant D. Hunt's refusal to respond to Movant's staff correspondance concerning the issue and by Taft policy, without informal correspondance, Movant was unable to ask for an administrative appeal. Movant was effectively denied administrative remedy by staff's willful inaction.

(23) Movant has now been transferred to a "Low" facility and Low facilities house more violent offenders unlike camp facilities. Movant is distraught and fears for his safety and well being. Movant should never have been transferred out of the camp setting into a more violent facility.

14

CAUSES OF ACTION

(1) Violation of the Fifth, Sixth, Seventh and Fourteenth Amend-
ments for absolute and intentional denial of legal access to
Movant that had real, actual and injurious effect on Movant
and constituted a violation of both 42 U.S.C. § 1983 and
28 U.S.C. § 2241.

(2) Violation of both 42 U.S.C. § 1983 and 28 U.S.C. § 2241 for
false and unlawful imprisonment in the SHU without the legal
or statutory authority to do so.

(3) Violation of Movant's First Amendment rights to free speech
by issuing retaliatory discipline for unwritten policies,
falsely changing Movant's security rating, transferring Mov-
ant from a camp to a low in retaliation, and conspiring to
do the same simply for Movant's exercise of the proper and
authorized staff correspondance and administrative remedy
process in an effort to silence Movant.  Defendants' vio-
lated 42 U.S.C. § 1983 with their conspiracy.

(4) Violation of Movant's First Amendment rights to freedom of
religious expression, violation of the Religious Land Use and
Institutionalized Persons Act and the Religious Freedom
Restoration Act and violation of both 28 U.S.C. § 2241 and 42
U.S.C. § 1983 for inhibiting and prohibiting Movant's rel-
igious activities and denying Movant opportunity to intro-
duce unfamiliar religious activities that were both allowed
and permissable in both the Movant's faith and already exis-
ted in other faith groups at Taft C.I.

(5) Violation of Movant's Eighth Amendment rights and 28 U.S.C.
§ 2241 for the issuance of unlawful sanctions by two seper-
ate UDC panels consisting solely of MTC employees who were
NOT employees of the Bureau of Prisons or of Federal Prison
Industries, Inc.

(6) Violation of Movant's Eighth Amendment rights and 28 U.S.C.
§ 2241 for the intentional infliction of emotional distress
and torture by sleep deprivation by MTC official policy and
employee action by the turning on of the bright overhead
lights during sleep hours approximately every 30-45 minutes
accompanied by the employees knocking on the cell windows to
wake the prisoners at the same time.  Between the light/dark
alternation and the purposeful and continued knocking no
meaningful sleep state could be achieved.  This procedure
was repeated each and every night for the entirety of the
Movant's stay in the SHU from March 9th through April 25th
2016.

(7) Violation of Movant's Eighth Amendment rights to meaningful
and equitable medical care without a variation in the stand-
ard of care between the inmate population.

(8) Civil conspiracy to violate Movant's constitutional rights
either by direct action or by willful and negligent inaction
of MTC officers and employees.

STATEMENT OF THE CASE

Movant is a white collar, first-time, non-violent offender
who self surrendered to Taft Camp in Taft, California on November

16

15th, 2016.   Movant has never had any incidents at Taft prior to
making a staff complaint against B. Pait and two other counselors
who made threats to Movant.   When Movant first arrived at Taft
C.I. camp staff was very disrespectful towards inmates in a very
dehumanizing way as a matter of everyday routine and ruled the
camp with a culture of embedded fear.

After Movant's complaint against staff to MTC's Special Inv-
estigative Service or S.I.S., unit staff's attitude toward inma-
tes improved but Movant asserts and alleges that staff may have
been non-plussed with Movant and carried a grudge about Movant's
staff complaint.

Movant asserts that MTC's quick and cohesive issuance of mul-
tiple disciplinary actions and sanctions against Movant could not
have functioned with such evil effeciency without staff collusion
and collaboration that rose to the threshold of civil conspiracy.
The MTC staff have made a guided and concerted effort to remove
Movant from Taft camp by ignoring Federal statutes and regulat-
ions, bending policy, at at times, by making unlawful disciplinary
actions without any written policy or verbal instructions ever
being made available to the Movant.

Movant asserts that Taft inmates are being treated in a very
partial and unfair fashion and that there is a varying standard
in inmate discipline.   Often one inmate is punished while others
go unscathed for the very same offense.   Movant asserts that the
private contract staff, many of whom are related, are regularly
violating the impartial treatment of inmates guaranteed to

17

prisoners by 28 CFR § 541.12 along with other provisions of that same regulation.

Movant asserts that the private contract staff have been improperly usurping the sanctioning powers of actual authorized B.O.P. staff and not utilizing those usurped powers fairly or legally in addition to ignoring inmates rights as an everyday normal business.

## STANDARD OF REVIEW

Movant herein challenges the Defendants' authority to enforce inmate discipline and SHU placement as if it were actually the B.O.P. and the laws regarding the applicability and validity pertaining to the same in their entirety. Movant asks the Court to consider all of the alleged constitutional violations and all of the relevant case law pertaining to the authority of MTC as a private contractor contained in Torres-Ramirez v. Benov, Lexis ID 180342 (9th Cir. 2013); Valenzuala v. Benov, Lexis ID 166540 (9th Cir. 2013); Kasirem v. Benov, Lexis ID 179892 (9th Cir. 2013); Arellano v. Benov, Lexis ID 41736 (9th Cir. 2014); and Arredondo -Virula v. Adler, 510 Fed App'x 581, 582 (9th Cir. 2013).

## ARGUMENT AND AUTHORITY

Movant asserts, and case law supports, the fact that MTC, a private, non-government entity, lacks the legal authority to issue validly effectual disciplinary sanctions to Federal inmates. The case law provided in the Standard of Review and 28 CFR § 541 .1 clearly indicate that the court has determined that non-B.O.P. staff do NOT have the requisite authority to issue disciplinary sanctions of any type as they are not Bureau staff as defined by

18

the Code of Federal Regulations.

28 CFR § 541.20 clearly states that the Bureau of Prisons shall operate the SHU and is silent on any allowance for non-Bureau contractors to operate and maintain a Special Housing Unit.  MTC's operation of the SHU is often open ended for inmates who may end up spending months at a time in 23 hour a day lock-down without ever actually having a disciplinary sanction ever issued or placed in the SHU for minor offenses.

Movant asks the Court to note that Movant has fully exhausted his administrative remedy process and diligently followed up on every appeal while at Taft C.I.  Movant has written to the Region 9 B.O.P. director, the Privitization Management Board, the Bureau of Prisons Central Office and the Department of Justice.  Movant has provided copies of his administrative appeals and staff corr-espondance as exhibits to this complaint.

Movant asserts that the courts have previously found that administrative appeal exhaustion is not required when the admin-istrative body is shown to be biased or has otherwise predeter-mined the issue before it.  See:  Ward v. Chavez, 678 F. 3d 1042, 1045-46 (9th Cir. 2012); Castro-Cortez v. INS, 239 F. 3d 1037, 1047 (9th Cir. 2001; Fernandez-Vargas v. Gonzales, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006); and Fraley v. United States Bureau of Prisons, 1 F. 3d 924, 925 (9th Cir. 1993).

The Court has previously determined that a significant diff-erence exists between employees and private independant contr-actors.  See:  Minneci v. Pollard, 132 S. Ct. 617, 623, 181 L.

19

Ed 2d 606 (2012); <u>Allied Chem. & Akali Workers of Amer., Local Union No 1 v. Pittsburgh Plate Glass Co., et al.</u>, 404 U.S. 157, 167, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971).  Under the plain meaning of the law private contractors are not authorized to discipline inmates.

The regulations enacted after June 20, 2011 still require that only "Bureau staff" be able to impose sanctions on inmates who commit prohibited acts.  See:  28 CFR § 541.1.  The definition of "staff" remained the same explaining that "staff" "means any employee of the Bureau of Prisons or Federal Prison Industries, Inc."  See:  28 CFR § 500.1.

In the past the Court has stated that "the plain language of the regulations state that only Bureau staff may discipline prisoners."  See:  <u>Kasirem v. Benov</u>, Lexis ID 179892; <u>Torres-Ramirez v. Benov</u>, Lexis ID 180342; and <u>Arredondo-Virula v. Adler</u>, 510 Fed App'x 581-582 (9th Cir. 2013).  The regulations and the court have clearly defined "staff".  Under the rules of statutory construction the Court has stated "we must follow that definition, even if it varies from that term's ordinary meaning."  See:  <u>Stenberg v. Carhart</u>, 530 U.S. 914, 942, 120 S. Ct. 2597, 147 L. Ed. 2d 742 (2000).  The regulation states what the term means, and, "[a]s a rule, a definition which declares what a term "means"...excludes any meaning that is not stated." <u>Id</u>. (citing <u>Colautti v. Franklin</u>, 439 U.S. 379, 392-393, n. 10, 99 S. ct. 675, 58 L. Ed. 2d 596 (1979).

Movant asserts that even if the statute would allow the conduct in question, the Bureau of Prisons is bound by the more lim-

iting language of the regulations.  See:  Morton v. Ruiz, 415 U.S. at 235; and Alcaraz v. INS, 384 F. 3d at 1662.

Movant asserts, and the Court has previously upheld, that the Bureau of Prisons IS bound by the regulations it imposes on itself and was NOT authorized to allow staff of a privately run prison to discipline prisoners or operate a SHU.  See:  United States v. 1996 Freightliner FLD Tractor, 634 F. 3d at 1116.  The fact that the B.O.P. issued a memorandum in 2007 creating a disciplinary procedure different than that authorized does not alleviate the private contractor's responsibility to strictly follow the regulations.  See:  Nat'l Ass'n of Home Builders v. Norton, 340 F. 3d 835, 852 (9th Cir. 2003).  Having to promulgate a regulation, the agency must follow that regulation.  As the private contractor's conduct was not authorized, Movant is entitled to relief and damages against the Defendants'.

Movant asks the court to note that his unlawful placement in the SHU was just as unlawful as MTC's issuance of disciplinary sanctions.  Movant asserts that his unlawful SHU placement has caused emotional distress and was tantamount to the kidnapping and oublietting of Movant.  MTC's actions were knowing, deliberate and malfeasant.

Movant asserts that if MTC had not unlawfully applied the two previous disciplinary sanctions MTC would not have had even the presumption to malfeasantly commit further injustice by placing Movant into restrictive lockdown segregation.  MTC, et al, did not have authority.

21

Movant asserts and alleges that during his stay in the SHU Movant repeatedly made written requests to the MTC staff requesting his rightful outgoing legal phone calls due under 28 CFR § 540.103 and either law library access or legal material delivery. Movant asserts that he attempted an administrative remedy on his denied legal access but it was rejected twice.  Movant was not allowed phone calls and with one exception, none of the legal materials requested were made available.

Movant asserts that prisoners have a Constitutional right of access to the courts guaranteed under the Fifth, Sixth, Seventh and Fourteenth Amendments.  See: Bounds v. Smith, 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977).  Included within that right of access to the courts is a prisoner's right of access to adequate law libraries or legal assistance from trained individuals.  The court has stated "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828

· The court NEVER differentiated between "regular" inmates and "SHU" inmates for purposes of legal access.  Furthermore, there is no established minimum requirement for satisfying tha access requirement; rather, "a reviewing court should focus on whether the individual Movant before it has been denied meaningful access."  See: Sands v. Lewis, 886 F. 2d 1166 (9th Cir. 1989).

In Lindquist v. Idaho State Bd. of Corrections, 776 F. 2d

22

851 (9th Cir. 1985) the court stated: "The existance of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the law library."  A prisoner may be able to make up for being too limited in his access to the right materials, but he cannot compensate for the unavailability of the materials he needs.  See: Vigliotto v. Terry, 865 F. 2d 1131-33 (9th Cir. 1989)

The court has previously stated that "Simply providing a prisoner with books in his cell, if he requests them, gives the prisoner no meaningful chance to explore the legal remedies he might have...  It is unrealistic to expect a prisoner to know in advance what materials  he needs to consult."  See: Toussaint v. McCarthy, 801 F. 2d 1080-1109 (9th Cir. 1986).

Movant further asks the court to note that Bounds and other cases do not always require actual injury to be a requirement for the substantiation of the denial of meaningful access.  Movant asserts that in the instant case actual damage has been caused in Movants case against Heritage Financial Corporation by way of the dismissal for failure to locate new counsel which Movant was prevented from achieving by direct intervention of MTC.  Toussaint v. McCarthy, 801 F. 2d at 1109 and Gluth v. Kangas, 951 F. 2d 1504, 1508 (9th Cir. 1991) both upheld the claim that unreasonable restrictions on access to the prison law library was viable without requiring the showing of actual injury.

Movant asserts that if an attorney must perform such preliminary research, it is no less vital for a pro se prisoner despite

23

the "less stringent standards" by which a pro se pleading is jud-
ged.  See: <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  The Court
has "constantly emphasized," habeus corpus and civil rights act-
ions are of "fundamental importance... in our constitutional
scheme" because they directly protect our most valued rights.
See:  <u>Johnson v. Avery</u>, 393 U.S. at 495; and <u>Wolff v. McDonnell</u>,
418 U.S. at 579.

Movant asserts that MTC violated his Fifth Amendment rights
by intruding into an existing attorney-client relationship.  MTC
was made  aware of the problem in writing, MTC deliberately did
not allow attorney-client communication, and as a result of MTC's
deliberate intervention the Movant has suffered grevious injury
to his existing litigation against Heritage Financial Corporation
which was actual injury to the Movant in the amount of the loss
of the claim which was $47,816,000.00.  This intentional abuse by
MTC caused  substantial prejudice against the Movant.  See:
<u>United States v. Stringer</u>, 535 F. 3d 929, 941 (9th Cir. 2008)
(citing to <u>United States v. Voight</u>, 89 f.  3d 1050, 1067 (3rd Cir.
1996).

MTC prevented Movant and his attorney from communicating
and acted "under the color of the law"  despite having no reason
and no legitimate penelogical  interest in preventing the commun-
ication.  The litigation was preexisting to Movant's incarcerat-
ion and had no bearing on institutional security.  The claim was
for breach of contract and other contractual violations and was
for money damages against Heritage Financial Corporation. MTC had

24

absolutely no reason, excepting spite, to interfere with Movant's preexisting legal action.

Movant asserts that the right of access to the courts and to counsel forbids any entity from "erecting barriers that impede the right of access of incarcerated persons" to file or continue civil actions that have a "reasonable basis in law or fact." See: Silva v. DiVittorio, 658 F. 3d 1090, 1002 (9th Cir. 2011) (quoting Snyder v. Nolen, 380 F. 3d 279, 290 (7th Cir. 2004), and John L. v. Adams, 969 F. 2d 228, 235 (6th Cir. 1992).

Movant asserts that MTC caused actual injury by causing the Movant to be unable to meet a court order deadline. The court has found that just such action is a valid reason to state a claim for denial of access to the courts. The court has stated: "actual injury is actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." See: Lewis v. Casey, 518 U.S. 343, 348-49, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); and Christopher v. Harbury, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).

Leeds v. Watson, 630 F. 2d 674, 676 (9th Cir. 1980) (quoting to Procunier v. Martinez, 416 U.S. 396, 419, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974) stated that" Regulations and practices that unjustifiably obstruct the availability of professional represen- tation or other aspects of the right of access to the courts are invalid." The undisputed facts show that MTC has not allowed Movant reasonable access and has arbitrarily denied the same.

Movant asserts that there is a liberty interest in avoiding administrative segregation especially regarding the additional burdens administrative segregation places on access to the courts. Movant asserts that his right of access claim is both valid and is aggrivated because private prison officials transferred Movant to hinder Movant's ability to litigate existing and contemplated suits and withheld legal resources and inmate legal files.   The placement into administrative segregation and subsequent transfer to a higher security prison presented an atypical and unwarranted hardship in Movant.  See:  Williams v. Hobbs, 662 F. 3d 994-1000 (8th Cir. 2011); Westerfer v. Neal, 682 F. 3d 679-681 (7th Cir. 2012); Silva v. DiVittorio, 658 F. 3d 1090, 1104 (9th Cir. 2011); and Marshall v. Knight, 445 F. 3d 965, 969 (7th Cir. 2006).

The Ninth Circuit has held that employees of a private prison can be held liable for violating a prisoner's Constitutional rights.  See:  Pollard v. GEO, 607 F. 3d 583 (9th Cir. 2010).

Movant asserts that the deliberate refusal of MTC officials to allow Movant's access to the courts and to counsel more than rose to the level of a Constitutional violation.  Prison officials must not use transfers or segregation to restrict access to the courts.  A prison cannot transfer an inmate to inflict punishment for complaining or to prevent the filing of a lawsuit. See:  Allah v. Seiverling, 229 F. 3d 220 (3rd Cir. 2000).

MTC officials had a duty to allow Movant to make attorney phone calls based on existing regulations and they breached that duty.  See: Yosuf v. U.S., 642 F. Supp. 415 (M.D. Pa. 1986).

26

Movant has more than met the test presented in Lovelace v. Lee, 472 F. 3d 174, 202 (4th Cir. 2006) with the staff correspondance exhibits.  Movant has shown the denial of a protected liberty interest, an atypical significant hardship, and constitutionally inadequate procedural safeguards by the MTC corporation and its officials.  The prison officials openly displayed and acted with "deliberate indifference", were informed of the condition in writing multiple times, and did not respond to alleviate the situation.  Prison officials cannot ignore a problem once it is brought to their attention.  See: Wilson v. Seiter, 501 U.S. 294 (1991); Farmer v. Brennan, 511 U.S. 825 (1994); and Vance v. Peters, 97 F. 3d 987 (7th Cir. 1996).

Movant need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. See: Haley v. Gross, 86 F. 3d 630, 641 (7th Cir. 1996).  Prison officials cannot incur liability under § 1983 unless the officials are shown to be personally responsible for the deprivation of a Constitutionally protected right, however several cases have shown that an inmates staff correspondance and administrative remedies to staff establish just such a basis for liability for damages under both § 1983 and § 2241.  See:  Gentry v. Duckworth, 65 F. 3d 555, 561 (7th Cir. 1995); Jones v. Chicago, 856 F. 2d 985, 992 (7th Cir. 1988); and Sheik Abdi, 37 F. 3d at 1248.

The courts have also found that the SHU legal request process for requiring "specific" cases and materials was too restrictive and constituted a violation  of prisoner's rights.  See:

27

Trujillo v. Williams, 465 F. 3d 1210 (10th Cir. 2006); and
Marange v. Fontenot, 879 F. Supp. 679 (E.D. Tex. 1995).

The right of access to the courts must be freely exercisable
by a prisoner without hinderance or fear of retaliation.  This
right of access is distinct from any liberty interest in remain-
ing free from administrative or disciplinary segregation despite
itself being a liberty interest.  A claim that is founded on the
right of access remains viable even if it is later determined
that a liberty interest was not violated by placement into seg-
regation and after the test in Sandin v. Conner, 515 U.S. 472
(1995).  See: Lewis v. Casey, 518 U.S. 343-355, 135 L. Ed. 2d
606, 116 S. Ct. 2174 (1996); and Wolff v. McDonnell, 418 U.S.
539, 579, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).

Retaliation is actionable even when the retaliatory action
does not involve a liberty interest.  Government or private act-
ions, which standing alone do not violate the United States Con-
stitution, may nonetheless be Constitutional torts if motivated
in substantial part by a desire to punish an individual for exer-
cise of a constitutional right.  To succeed on a retaliation
claim, a prisoner need not establish an independant Constitut-
ional interest in either assignment to a given prison or place-
ment in a single cell, because the crux of his claim is that
"officials violated his U.S. Constitutional Amendment rights by
retaliating against him for his protected speech activities."
See: Pratt v. Rowland, 65 F. 3d 802, 806-807 (9th Cir. 1995);
and Babcock v. White, 102 F. 3d 267, 274-275 (7th Cir. 1996).

28

The right to access the court and to counsel has a number of Constitutional roots, including the Due Process Clause and the First, Fifth and Fourteenth Amendments.  See: Peterkin v. Jeffes, 855 F. 2d 1021, 1036 n. 18 (3d Cir. 1988).  These roots ensure action by the court on behalf of all prisoners, even those in segregation.  All prisoners are Constitutionally entitled to meaningful access to the courts and to converse with counsel.

"When the remedial powers of a Federal Court are invoked to protect the Constitutional rights of inmates, the court may not take a hands off approach..."  See Ruiz v. Estelle, 679 F. 2d 1115 (5th Cir. 1982), 103 S. Ct. 1438 (1983).

Where retaliation is made against a prisoner the prisoner is entitled to compensatory, punitive, and other forms of damages from the offending parties.  A prisoner cannot be punished for filing a lawsuit nor can they be punished by segregation or by transfer to another facility when that transfer is not truly warranted for documentable security reasons.  See: Olim v. Wakinekona, 460 U.S. 238 (1983); Thaddeus-X v. Blatter, 175 F. 3d 378 (6th Cir. 1999); and Cleggett v. Pate, 229 F. Supp. 818 (N.D. Ill 1964).

Prisoners must test three prongs for a retaliation claim all of which Movant has accomplished.  One, Movants actions were something that Movant had the Constitutional right to do.  Two, What the officials did in adverse action would stop an average person from filing or continuing a suit. Three, there was a causal connection between the officials action and Movant's protected

29

conduct.

MTC's staff condicted a campaign of harassment against Movant and their actions enforced a policy of retaliation. See: Calhoun v. Hargone, 312 F. 3d 730 (5th Cir. 2002); Witte v. Wisconson Dept. of Corrections, 434 F. 3d 1031 (7th Cir. 2006); and Gomez v. Vernon, 255 F. 3d 1118 (9th Cir. 2001).

Courts have found time and again that prison's and prison employees can be liable for major damages that have non-physical causation. Retaliatory transfers by officials can have lasting effects on prisoner's litigation and can warrant awards that are substantial. See: Siggers-El v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2006); Harris v. Garner, 190 F. 3d 1279 (11th Cir. 1999); Royal v. Kautzky, 375 F. 3d 720 (8th Cir. 2004); Calhoun v. DeTella, 319 F. 3d 936 (7th Cir 2003); Canell v. Lightner, 143 F. 3d 1210, 1213 (9th Cir. 1998); Robinson v. Page, 170 F. 3d 747, 748 (7th Cir. 1999); Thompson v. Carter, 284 F. 3d 411 (2nd Cir. 2002); and Cockroft v. Kirkland, 548 F. Supp. 2d 767 (N.D. Cal. 2008).

The court has found that if the Prison Litigation Reform Act is applied to foreclose recovery in First Amendment or other actions, it would constitute an unjust taking and it would place the First Amendment itself "on shakey Constitutional ground." See: Siggers-El v. Barlow, 433 F. Supp. 2d at 816.

The Court has stated "We have recognized that the right of access to the courts...must be freely exercisable without hinderance or fear of retaliation." This right in a retaliation case

is located in the First Amendment right to petition for redress
of greivances.  See: Millhouse v. Carlson, 652 F. 2d 371,374 (3rd
Cir. 1981).  Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 140
L. Ed. 2d 759, 118 S. Ct. 1584 (1998) stated that "The reason why
...retaliation offends the Constitution is that it threatens to
inhibit the exercise of a protected right."  An action comparable
to transfer to segregation or to another facility is certainly
adverse.  Such a transfer out of a facility moots a claim for
injunctive or declaratory relief with respect to prison condit-
ions but NOT a claim for damages.  See:  Weaver v. Wilcox, 650 F.
2d 22, 27 n. 13 (3rd Cir. 1981).  Movant has established a solid
claim for damages against MTC and its officers and employees.

Movant alleges and asserts that while in the Special Housing
Unit at Taft C.I. the MTC staff turned the cell overhead lights
on approximately every thirty minutes during sleep hours and that
during that "lights on" period the staff routinely knocked on the
cell windows to wake prisoners up.  This procedure effectively
prevented Movant from achieving a restful or meaningful sleep
state.  Movant asserts that MTC staff would not respond to his
repeated requests for information about the "lights & knocking"
policy.  Movant alleges that MTC staff are deliberately utilizing
this tactic as an unlawful punitive measure.

Movant alleges that this sleep deprivation was employed by
MTC staff each and every night and that no real or credible rea-
son exists for such treatment.  Movant asserts that this MTC SHU
policy is punitive in the extreme to the point of violating the

31

Eighth Amendment of the Constitution and 28 U.S.C. § 2241.

Movant asserts that this sleep deprivation amounted to de-facto torture and was unwarranted for a minimum security camper with minimal security points.  Movants asserts that the alternating light blasts and incessant knocking every 30 minutes was much worse than simply a state of constant illumination.  Constant illumination by itself was determined by the court to be unlawful.  The Ninth Circuit court of Appeals has found "No legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination." Keenan, 83 F. 3d at 1090-91 (9th Cir. 1995).

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." See: Estelle v. Gamble, 429 U.S. 97-102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  The light blasts every thirty minutes coupled with staff's knocking until prisoner's were awakened more than satisfied the "deliberate indifference" standard and its conjunctive objective and subjective prongs.  The court has found that "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." See: Chappell v. Mandeville, 706 F. 3d 1052-61 (9th Cir. 2013) (quoting to Wilson v. Seiter, 501 U.S. 294-304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) and also Willaims v. Anderson, Lexis ID 29284 (2015); Jones El v. Burge, 164 F. Supp. 2d 1096 (W.D. Wisc. 2001); and Scarver v. Litscher, 434 F. 3d 972 (7th Cir. 2006).

MTC staff's actions were both wanton and unnecessary.  They had no legitimate penelogical interest and inflicted sleep deprivation, physical discomfort and psychological pain. They more than warranted an Eighth Amendment violation.  The court has upheld the use of improper lighting as abusive.  See:  Rhodes v. Chapman, 452 U.S. 337-347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) and Keenan v. Hall, 83 F. 3d 1083-1090 (9th Cir. 1996) (quoting to Hoptowit v. Spellman, 753 F. 2d 779-782 (9th Cir. 1985).

During the entire course of Movant's stay at Taft C.I. the Chaplain's department was actively preventing Movant from exercising his religious practices, placing  roadblocks between Movant and his attempts to utilize Bureau of Prisons procedures to introduce aspects of his faith that were unfamiliar to the Taft C.I. chaplain's department, and staff was allowed to openly disrespect Movant's faith and to violate Movant's religious worship area that had been set aside for the Asatru faith.

MTC and its staff violated Movant's religious freedoms by refusing to allow Movant's religious use of pipes and pipe tobacco, refusing to allow Movant his authorized 2 ounce portion of honey mead and refusing to allow the introduction of religious items that were no threat to institutional security.  Other faith groups at Taft C.I. were allowed to utilize tobacco but Movant's faith group was specifically excluded, and worse, when evidence was presented documenting the Movant's religious use of tobacco it was ignored, denied, and after much written correspondance on the Movant's part, even the attempt to use existing B.O.P. pro-

33

cedure to introduce the religious practices considered "new or unfamiliar" by Taft staff was met with hostility and denial.

Movant's fire ceremony was impacted by staff by the theft of Movant's firewood and Movant's faith based religious garden was uprooted and killed and staff made members of the Movant's faith carry out the destruction personally while they watched and laughed.

Despite being a private prison facility MTC / Taft C.I. does accept Federal funding from the United States Bureau of Prisons and that makes them responsible to, and liable for, violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§2000cc-1(a)(1)-(2) and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb to 2000bb-4.  See: Pugh V. Goord, 571 F. Supp. 2d 477 (S.D. NY 2008).

By enacting the RLUIPA Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to Constitutional free exercise claims.  Movant asserts that MTC's actions did indeed impose a substantial burden on Movant's right to exercise his religion and even when presented with evidence documenting Movant's religious practices, MTC refused to accomodate the Movant's non-invasive religious practices.  Movant's religious use of tobacco, planting of his faith's nine sacred herbs, and use of the pre-existing firepit in the established Asatru garden grove was not a threat to institutional security or staff safety.

The Supreme Court has explained that RULIPA bars inquiry

34

into whether a particular belief or practice is central to a particular prisoner's religion.  In determining that courts are not to look to the centrality of a belief or practice, the Supreme Court cited 42 U.S.C.S. § 2000cc-5(7)(A), the provision in the RLUIPA that defines "religious exercise" to include any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

Although courts give prison officials lattitude within which to make appropriate limitations, they do not allow conclusory statements and post hoc rationalizations for conduct that is discriminatory between the allowable practices of differing faith groups at the same institution.  If one group such as the native americans can utilize sacred herbs and is allowed to do so, and another group such as the Movant's Asatru faith can document the use of sacred herbs in its faith, the refusal of staff to allow the secondary group to put forward documentation to allow for the use of the same religious right is in fact discriminatory and violates the First Amendment.

The Movant's religious use of tobacco is already an allowable religious practice under existing Bureau of Prisons policy statements and does not differ in any significant way from other groups practices like the use of prayer oils, incense, herbs, wine, or other item.

In Charles V. Verhagen, 348 F. 3d 601 (7th Cir. 2003) the court found that RLUIPA created a private right of action for individual prisoners and that RLUIPA follows in the footsteps of

of a long-standing tradition of federal legislation that seeks to eradicate discrimination and is designed to guard against unfair bias and infringement on fundamental freedoms. RLUIPA's attempt to protect prisoner's religious rights and to promote the rehabilitation of prisoners falls squarely within Congress' pursuit of the general welfare under its Spending Clause authority.

The Supreme Court has held that Congress is well within its rights to attach conditions (such as RLUIPA) to the receipt of federal money incident to its Spending Clause power. See: South Dakota v. Dole, 483 U.S. 203, 206, 97 L. Ed. 2d 171, 107 S. Ct. 2793 (1987).

RLUIPA seeks to lift the burdens on religious worship in institutions without affording corresponding protection to secular activities or to non-religious prisoners. RLUIPA merely accommodates and protects the free exercise of religion, which the Constitution allows. See: Mayweathers v. Newland, 314 F. 3d 1062 1066-67 (9th Cir. 2002) (citing Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327 334, 97 L. Ed. 2d 273, 107 S. Ct. 2862 (1987)); EEOC v. Catholic Univ. of Am., 317 U.S. App. D.C. 343, 83 F. 3d 455, 470 (D.C. Cir. 1996).

MTC prison officials, in contrast to Movant, have NO Constitutional right, much less a fundamental Constitutional right, to limit the Movant's exercise of religion. By refusing to allow or even allow discussion on, certain religious practices, MTC did just that, they intentionally and unlawfully restricted Movant's

religious freedoms and religious practices.  Many cases follow Charles v. Verhagen interpretation of RLUIPA such as Cutter v. Wilkinson, 423 F. 3d 579 (6th Cir. App 2005) and Madison v. Virginia, 474 F. 3d 118 (CA4 Va 2006).

While Movant was at Taft C.I. the staff's treatment of his Asatru faith was not neutral.  Staff was discriminatory, rude, abusive and did not allow Movant freedom to practice his religious beliefs no matter how they were presented or how much corresponding documentation was presented.  Movant was made to feel like a second class citizen behind the christian population and at times chaplains actively walked away from Movant and stood Movant up repeatedly when meetings were scheduled to discuss faith based issues.

MTC's actions went well beyond simple negligence toward the Movant.  Staff engaged in a willful and pursposeful campaign of intentional malfeasant conduct toward Movant and his faith.

MTC has effectively waived any claim of immunity from monetary damages in this case filed against MTC and its employees in their individual capacities as they were acting in an official capacity, under the color of law, and in violation of the Equalization Act of 1986, 42 U.S.C. § 2000-7(a)(1) by their acceptance of federal prison funding.

Movant alleges and asserts that the Defendants' actions in the Verified Complaint and Petition for Relief have risen to the level of a civil conspiracy for the purposes of violating the Movant's Constitutional and Civil Rights to administrative rem-

edy, legal redress and access to the courts, inhumane standard of
care, unauthorized discipline, false imprisonment and violating
Movant's rights of free speech and freedom of religion.

Prisoners' under the Prison Litigation Reform Act are req-
uired to exhaust the administartive remedy process before taking
legal action and MTC and its employees at Taft C.I. are doing
everything in their power to make sure inmates are prevented from
conducting meaningful reserch and having court access.  Defend-
ants' have violated Movant's rights and have done do with the
full and complicit knowledge of their superiors at MTC.

In the Arredondo-Virula v. Adler, 510 Fed. App'x 581-582
(9th Cir. App. 2013) Lexis ID 3954 the Plaintiff won his case at
the court of appeals regarding MTC's unauthorized use of dicip-
line and it was just one of many similar cases in 2013.  After
a company like MTC has been sued and has lost five, six, or
seven times on the same issue it is not unreasonable to attribute
responsibility for the staff's repeated transgressions to the MTC
leadership, specifically Warden Craig Apker and CEO Scott
Marquardt under a Respondeat Superior doctrine.

The repeated issuance of unlawful discipline could only have
been condoned by the aquiesence of the top officials especially
given that Mr. Marquardt is an educated J.D. and as such should
have been more than capable of understanding the precarious pos-
ition that his employees were putting him in.

MTC has no qualified or soverign immunity from suit despite
its acting "under the color of law" and this applies equally

38

to its employees, officers and executives.  In reality MTC is not
a governmental entity and is not entitled to any protection under
28 U.S.C. § 1915a(a) or § 1915 (e)(2)(B).

MTC's senior staff had personal involvement and either knew
of, or should have known of, Movant's written greivances and
staff's prior indiscretions.  Personal involvement can stem from
direct knowledge or direct action but in the case of a CEO or
senior officer who is also a professionally trained attorney with
a juris doctorate and in the private prison business, a willful
and negligent disregard for his underlings open and repeated
flauting of Federal law and Federal court rulings also constit-
utes "personal involvement".

If the legal standard of "known or should have known" is
enough to criminally indict and put into prison so many of Mr.
Marquardt's clients on a variety of charges, it is more than
adequate to assign civil liability and financial responsibility
for damages with the MTC corporation and its CEO Scott Marquardt
personally, corporately and morally under Respondeat Superior.

The MTC corporation and its officers, employees and agents
must be held jointly and severally liable up to and including its
CEO.  See: Berry v. City of Detroit, 25 F. 3d 1342-48 (6th Cir.
1994); White-Ruiz v. City of New York, 983 F. Supp. 365, 390-96
(S.D. NY 1997); Di Sorbo v. Hoy, 343 F. 3d 172, 181-82 (2nd Cir.
2003); Moneli v. Dept. of Soc. Servs., 436 U.S. 658, 690, 98 S.
Ct. 2018, 56 L. Ed. 2d 611 (1978); West v. Atkins, 487 U.S. 42,
54-57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

39

## REQUESTED RELIEF

(1) Movant requests that the court remove any and all discipl-
inary sanctions and actions resulting from actions taken by
MTC staff, and any and all actions by the B.O.P. that rel-
ied on the MTC issued sanctions, from the Movant's B.O.P.
record and/or instruct the Bureau of Prisons to remove any
and all disciplinary records and or sanctions arising from
MTC's unlawful application of disciplinary action against
Movant.

(2) Movant asks that Movant's "good-time" credit that was unlaw-
fully taken as a result of MTC's actions be restored.

(3) Movant asks that the court direct the B.O.P. to properly
readjust Movant's security points and secuirty status to
reflect the removal of the illegal disciplinary sanctions
and the staff imposed "Management Variable"

(4) Movant seeks $35,000 in damages for each and every day spent
in the Taft C.I. Special Housing Unit as a result of the
unlawful sanctions.

(5) Movant seeks $100,000 for each and every day spent in the
SHU's administrative segregation after his punishment was
officially completed and he should have been released.

(6) Movant seeks actual damages for MTC's refusal to allow Mov-
ant to access to counsel and to the courts in the amount of
the value of his dismissed civil suit against  Heritage
Financial Corporation in the amount of $47,816,000.00

(7) Movant seeks damages in the amount of $999,999.33 in emot-

40

ional distress and psychological torture caused by MTC's
sleep deprivation policy of "lights & knocking"

(8)   Movant seeks any other damages the court feels are approp-
riate to punish Defendant's behavior.

Movant asks the court to note that MTC is a private for-
profit company and as such the only real message that MTC and
its staff will understand is a direct and lasting impact on their
financial bottom line.  Without substantial monetary damages in
favor of the Movant MTC will simply continue their practice of
ingnoring court rulings and abusing inmates constitutional and
civil rights.  MTC's conduct has lasting effects on thousands of
inmates who do not have meaningful access to the courts and do
not have an unbiased administrative remedy process.

CONCLUSION

Movant asserts that Defendants' are abusing their authority
unlawfully, exercising disciplinary sanctioning authority that
they do not legally possess and willfully disregarding inmates
remaining constitutional and civil rights.  No possible reason
exists to treat minimum security campers the way  MTC does.  MTC
staff openly disrespect inmates, often act in collusively uneth-
ical, threatening, and capricious ways to cover for each other to
the point of civil conspiracy.  Inmates lose every time.

Appeals and administrative remedies are ignored, discourag-
ed, and almost never successful no matter how cogent or what the
issue.  Appeals are rejected for lack of informal correspondance,
which in many instances staff  refuses to respond to, and when

41

informal attempts have been garnered the offical appeals are denied for policies that MTC refuses to let inmates see despite being referenced in the MTC handbook and MTC company manual. MTC has one simple policy, they strictly abide by the B.O.P. policies if it is in their favor and they are a private organization and do not have to abide by B.O.P. policies if the policy favors an inmate or inmates rights.  This double standard must end.

Movant asks the court to do the right thing, to do the just thing and put a stop to privitized prisons abuse of inmates rights and not allow them to continually play both sides of the fence.

### VERIFICATION OF COMPLAINT

I declare under penalty of perjury of the laws of the United States and all applicable Federal rules and statutes that the foregoing detailed facts are true, correct and accurate to the best of my knowledge.

Signed this 27th day of May , 2016.

_____

Emiel A. Kandi, Movant, Pro se

42

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**AT FRESNO**

EMIEL A. KANDI,

                Plaintiff-Movant,

      v.

MANAGEMENT AND TRAINING
CORPORATION, SCOTT MARQUARDT,
CRAIG APKER, DALE PATRICK,
J. BERNAL, D. HUNT, R.
DUNHAM, BURNETT RUCKER, B.
PAIT, (?) MORSETH, DOES 1-9,

           Defendants'.

No._____

DECLARATION OF EMIEL A. KANDI
IN SUPPORT OF HIS VERIFIED
COMPLAINT AND PETITION FOR
RELIEF PURSUANT TO 28 U.S.C.
§2241 AND 42 U.S.C. §1983
AND ALL MOTIONS ATTACHED
THERETO

Emiel A. Kandi, Movant in the above captioned case, declares under penalty of perjury that the following is true and correct to the best of Movant's knowledge, and in support of, his Verified Complaint, Petition for Relief, and all Motions attached thereto.

Movant begs leniency from the court in the construction, application, and interpretation of his pro se complaint, petition, and motions. Movant is currently in Federal custody and does not have computer, word-processing, or PACER access. Movant is doing

1

the absolute best that he knows how to do given his limited circumstances.

Movant asks the court to hear his case and to grant his attached motions and ultimately grant relief and damages. Movant warrants that this case is brought in good faith and that Movant has made true allegations about Defendants' malfeasant actions.

Movant has been unjustly violated and mistreated.

Movant asks the court to accept his presentation of the case to include the administrative remedy exhibits and Movant asks the court to note that he has diligently pursued the administrative remedy process to the point of exhaustion. Movant has been retaliatorily transferred away from Taft camp and can no longer pursue remedies against MTC / Taft other than in Federal court.

Movant has gone above and beyond to pursue every possible option to the best of his ability and with all possible diligence that his level of education and financial ability will allow.

Signed this 27th day of May , 2016.

Emiel A. Kandi, Movant, Pro se

2

1

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

EASTERN DISTRICT OF CALIFORNIA

8

AT FRESNO

9

EMIEL A. KANDI,

No._____

10

           Plaintiff-Movant,

DECLARATION OF ADOLFO GUZMAN
IN SUPPORT OF EMIEL A. KANDI'S
VERIFIED COMPLAINT AND
PETITION FOR RELIEF v.
MANAGEMENT AND TRAINING
CORPORATION, ET AL.

11

    v.

12

MANAGEMENT AND TRAINING
CORPORATION, SCOTT MARQUARDT,
CRAIG APKER, DALE PATRICK,
J. BERNAL, D. HUNT, R.
DUNHAM, BURNETT RUCKER, B.
PAIT, (?) MORSETH, DOES 1-9,

13

14

15

        Defendants'.

16

17

Comes now Adolfo Guzman before the court to offer this declar-

18

ation in support of  Emiel A.  Kandi and against the Management

19

and Training Corporation.  I declare under the penalty of perjury

20

that the following is true and correct to the best of my knowledge

21

and that my declaration has been made without any promise of pay-

22

ment or consideration of any kind.

23

I was an inmate at Taft Correctional Institution in  Taft, CA.

24

I met Emiel A. Kandi for  the first time at Taft, C.I.  I was

25

placed into the Taft Special Housing Unit on January 19th, 2016

1

for investigation.  During the entirety of my stay in the SHU the MTC staff regularly turned the bright overhead cell lights on approximately every half-hour during sleep hours and accompanied the "lights-on" period with  loudly incessant knocking on the cell window until I was wide  awake and responded to them. Any attempt by me to try and  sleep through the "lights on" and knocking period every thirty minutes was not allowed and not possible.

I resided in the SHU until May 25th, 2016 and this behavior by MTC staff continued each and every night despite repeated verbal protests by me to the staff.  I asked staff repeatedly to desist.  The net effect of this MTC policy was extreme sleep deprivation on my part and daily exhaustion that continued for months on end.  I was  under investigation and was not issued any disciplinary sanction until April 28th, 2016.  I was subject to this cruel and unusual punitive tactic for 125 days, 99 days of which were PRIOR to any sanction being issued.

MTC  staff had no legitimate reason to  wake SHU inmates up every thirty minutes for months on end and the needs of the investigation and of justice could have easily been met without wanton cruelty and deliberate indifference to the intentional infliction of torture tactics.

Further my Declaration sayeth Naught.

Signed this _27_ day of _MAY_____, 2016.

Adolfo Guzman                    Register No.  _15779.022_

2

**CERTIFICATE OF SERVICE**

I, ___Emiel A. Kandi___, hereby certify that I have

served a true and correct copy of;

1. Summons and Verified Complaint & Petition for Relief
2. Motion for Permission - Inmate Legal Mail to Inmate Witnesses
3. Motion for Service by U.S. Mail
4. Motion to proceed In Forma Pauperis
5. Motion to Compel Photocopies
6. Declaration of Emiel A. Kandi in Support of Complaint & Petition
7. Declaration of Adolfo Guzman in Support of Complaint & Petition

[which is considered filed/served at the moment it was delivered

to prison authorities for mailing as provided for in Houston v.

Lack, 487 U.S. 266, 101 L.Ed.2d 245 (1988)] to the following

listed parties/persons by placing a complete copy of the above

described materials in a sealed envelope affixed with the

appropriate pre-paid first-class United States postage:

United States District Court
Eastern District of California
At Fresno
Clerk of the Court
2500 Tulare Street, Suite 2501
Fresno, CA 93721-1318

and deposited same with prison officials here at the Federal

Correctional Institution in Lompoc, California, on this the

___27th___ day of ___May___, 2016.

Pursuant to Title 28, United States Code section 1746, I

declare under penalty of perjury that the foregoing is true and

correct. Executed this the ___27th___ day of ___May___, 2016.

(Signature) _____

Printed Name: Emiel A. Kandi
Federal Register # 43159-086
Federal Correctional Institution (Low)
3600 Guard Road, Lompoc, CA 93436-2705
No Telephone/Fax/E-Mail Available

1

2

3

4

5

6

## UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

## AT FRESNO

9 EMIEL A. KANDI,                          No._____

10                 Plaintiff-Movant,
                                          SUMMONS OF VERIFIED COMPLAINT
11          v.                            AND PETITION FOR RELIEF
                                          PURSUANT TO 28 U.S.C. § 2241
12 MANAGEMENT AND TRAINING                AND 42 U.S.C. § 1983
   CORPORATION, SCOTT MARQUARDT,
13 CRAIG APKER, DALE PATRICK,
   J. BERNAL, D. HUNT, R.
14 DUNHAM, BURNETT RUCKER, B.
   PAIT, (?) MORSETH, DOES 1-9,
15
                 Defendants'.
16

17     TO THE ABOVE NAMED DEFENDANTS': You are hereby summoned and

18 required to serve on Movant, whose address is: Emiel A. Kandi,

19 Register No. 43159-086, Lompoc Federal Correctional Institution,

20 3600 Guard Road, Lompoc, California, 93436-2705, an answer forth-

21 with to the complaint which is herewith served upon you, within

22 twenty (20) days after service of this summons upon you, exclu-

23 sive of the day of service, or sixty (60) days if the United

24 States Government or officer or agent thereof is a defendant.

       If you fail to do so, judgment by default will be taken
25

1

1 │ against you for the relief demanded in the Verified Complaint

2 │ and Petition for Relief.

3

4

5 │ Clerk of the Court, Signature

6

7 │ Clerk of the Court, Printed Name

8

9 │ Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2