# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMIEL A. KANDI,<br><br>Plaintiff,<br><br>v.<br><br>MANAGEMENT & TRAINING CORPORATION, et al.,<br><br>Defendants. | Case No. 1:16-cv-00794-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM<br>(ECF No. 26)<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff Emiel A. Kandi ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff initiated this action on June 8, 2016. (ECF No. 1.) On May 15, 2017, the Court dismissed Plaintiff's first amended complaint and granted him leave to amend. (ECF Nos. 24, 25.) Plaintiff's second amended complaint, filed on June 1, 2017, is currently before the Court for screening.

## I. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal* at 678; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556–57.

The pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently incarcerated at Lompoc Federal Prison Camp - South in Lompoc, California. The events in the first amended complaint are alleged to have occurred while Plaintiff was incarcerated at Taft Correctional Institution ("Taft") in Taft, California. Plaintiff names the following defendants in their individual and official capacities: (1) Management & Training Corporation ("MTC"); (2) American Zurich Insurance Company, insurance company for MTC;

| | |
|---|---|
|1| (3) Scott Marquardt, President and CEO of MTC; (4) Craig Apker, Taft Warden; (5) Dale Patrick, Taft grievance and legal coordinator; (6) J. Bernal, Taft Unit Manager; (7) D. Hunt, Taft Sergeant; (8) R. Dunham, Taft horticulture supervisor; (9) Burnett Rucker, Taft Chief Medical Doctor; (10) F. Luna, Taft Associate Warden; (11) M. Friend, Taft Associate Warden; (12) Georgina Puentes, Taft Associate Warden; (13) J. Letterman, Taft Lieutenant; (14) Lt. Craig, Taft Lieutenant; (15) Lt. Sy, Taft Special Investigative Service Lieutenant; (16) Major Manuz, Taft Major; (17) B. Pait, Taft Counselor; (18) C. Mann, Taft Counselor; (19) Martin, Taft Counselor; (20) D. Lane, Taft Case Manager; (21) A. Jones, Taft case manager; (22) Sgt. Adams, Taft Sergeant; (23) Stephanie Hicks, Taft nurse; (24) Laurie Watts, Taft Health Services Administrator; (25) B. Morseth, Taft Chaplin; (26) Ralph Ehli, Taft Chief Psychologist; (27) Steven Jenkins, Taft Psychologist; (28) M. Swanson, Taft Correctional Officer; (29) J. Bryant, Taft Education Director; (30) Preston Benson, Bureau of Prisons ("BOP") employee; (31) Richard Nygren, BOP employee; (32) Pamela Jones, BOP employee at Privatization Management Board; (33) Steven Langford, Warden at Lompoc; (34) Mary M. Mitchell, BOP Regional Director; (35) Thomas R. Kane, BOP Director; (36) Logan, MTC employee and disciplinary hearing officer; (37) C. Cruz, BOP employee and disciplinary hearing officer; (38) Loretta Lynch, then U.S. Attorney General; (39) United States BOP; (40) United States Department of Justice; (41) United States of America; and (42) Does 1–99.

Plaintiff alleges that he is an Arab-American and practicing member of the Asatru faith. On February 25, 2016, he was issued a disciplinary incident report, a.k.a. "shot," by Defendant J. Bernal for refusing to work. The shot was issued during work hours that were not Plaintiff's regularly assigned hours. The shot was issued for failing to be in the dorm during inspection. Plaintiff contends that the shot was issued in retaliation for him having lodged a formal staff complaint against several of the unit-team staff.

On February 29, 2016, Plaintiff was subjected to a Unit Disciplinary Committee ("UDC"), comprised of entirely of MTC employees, Defendants D. Lane and A. Jones, and no BOP staff were present. Plaintiff allegedly informed the UDC of its lack of authority, and BOP did not apply or issue certification of the UDC's findings. Plaintiff was sanctioned with the loss of his

3

job as a night-time orderly and fired.

On February 29, after the UDC concluded, Plaintiff was reassigned to horticulture supervisor Defendant R. Dunham, who allegedly was known for arbitrary discipline, racist statements and rude behavior toward the inmate population. Plaintiff objected, but was given no opportunity to appeal the transfer.

On November 19, 2015, Plaintiff had applied to work in the MTC before he knew of Defendant Dunham's reputation. Plaintiff thought that work in the herb garden would be within his medical restrictions and capabilities. Defendant Dunham stated to Plaintiff that he had no use for people with bad backs, but cited institutional needs and food service as the reasons for denying Plaintiff's horticulture application. Defendant Dunham knew about Plaintiff's medical conditions.

On March 1, 2016, Plaintiff underwent his orientation with Defendant Dunham. Plaintiff advised Defendant Dunham of his intention to appeal the UDC decision and also advised him of his medical restrictions. Plaintiff participated in the orientation in good faith, but refused to sign the job description paperwork due to his upcoming UDC appeal. Later that same day, Defendant Dunham summoned Plaintiff into his office and threatened that he would issue a disciplinary shot for violation No. 306, refusing to work. Plaintiff signed the papers under duress and under threat of sanction. Plaintiff filed a Sensitive BP-10 staff complaint about Defendant Dunham with Mary M. Mitchell, the regional director of the BOP Western Region.

On March 2, 2016, Plaintiff was assigned to stand and dig out weeds form the MTC parking lot in 90 degree weather. Plaintiff had medical restrictions against prolonged standing and chronic pain issues. Defendant Dunham insisted that Plaintiff work a seven-hour shift standing and digging weeds. Plaintiff was the only inmate assigned to this duty, and it was not a normal task for any inmate. Plaintiff worked for several hours until his lower back was even worse. Plaintiff reported to a correctional officer who told Plaintiff to report to the MTC medical department. Plaintiff reported to camp control before reporting to MTC medical. Plaintiff was met by Sgt. Hunt. Plaintiff explained the situation and was told to report to the MTC medical department after reporting to Defendant Dunham.

1     As Plaintiff sat in the MTC medical department waiting room, D. Hunt entered and spent about fifteen minutes discussing Plaintiff's situation with the nurse, Stephanie Hicks. Defendant Dunham also entered MTC medical and spoke with medical staff before Plaintiff was seen or evaluated. Plaintiff could see the participants and hear them when the door opened and closed. Plaintiff could hear that MTC staff were discussing and disclosing his medical information without authorization.

    Plaintiff was placed on temporary medical unassignment. When Plaintiff was asked to sign the medical report, he saw that Defendant Dunham had made a notation on the report stating that he had not been informed of Plaintiff's medical restrictions. Before Plaintiff was placed on medical unassignment, Defendant Dunham was verbally abusive and told Plaintiff that he was lying about his medical restrictions.

    On March 3, 2016, Plaintiff submitted his administrative appeal of the UDC's pre-determined outcome and lack of legal authority to issue sanctions.

    On March 7, 2016, Plaintiff submitted a combined complaint about J. Bernal and R. Dunham. MTC purportedly opened an official investigation against J. Bernal and R. Dunham, but promptly closed it, stating that no further information would be provided. Plaintiff was effectively barred by MTC from filing any higher level remedies and MTC confiscated all of the documents submitted with the complaint.

    Plaintiff was reassigned back to R. Dunham after he was taken off of medical unassignment. By this time, Plaintiff had been threatened, sworn at and called a liar by R. Dunham. Plaintiff refused to work for an abusive supervisor who had ignored his pre-existing medical conditions.

    On March 9, 2016, the same day Plaintiff refused to report to R. Dunham, Plaintiff was thrown out of camp and into the SHU segregation unit. No BOP staff members were involved in the SHU placement or in the investigation or issuance of the disciplinary actions that preceded the SHU placement. MTC private employee, Defendant J. Letternam, signed the SHU detention order.

///

Plaintiff objected to the SHU placement when presented with the discipline shot and only signed the papers under duress. A second UDC was convened to rule on the second refusal to work shot. The UDC panel was made up of two people, one of whom was J Bernal. Plaintiff had an active staff complaint pending against J. Bernal. Plaintiff pointed out that J. Bernal's presence on the UDC panel was improper and that without the presence of actual BOP staff, any disciplinary actions taken by MTC were invalid.

From the time Plaintiff was placed in SHU segregation on March 9, 2016, he was denied legal access, law library access and access to his private attorney. Plaintiff's private attorney also was blocked from calling in to the MTC institution. When Plaintiff entered SHU custody, he was given a printed handout of the SHU rules. The first handout stated that legal materials would be delivered each weekday. The handout was altered after Plaintiff began complaining about the lack of legal access. Plaintiff repeatedly requested specific legal materials that were never provided. Staff correspondence was often not returned and no case law or research was ever provided.

On March 18, 2016, the Ninth Circuit issued an order for Plaintiff to respond in his civil litigation against Heritage Financial, which had been ongoing for several years. Plaintiff was prevented from contacting the outside world and was not allowed to use the phone or make legal calls. After thirty days, the Court dismissed Plaintiff's case for lack of prosecution, which caused the loss of assets and potential damages. Plaintiff made MTC staff aware of his pending court action and deadlines at every opportunity.

On April 11, 2016, Plaintiff was brought before Hearing Officer C. Cruz, an authorized BOP Disciplinary Hearing Officer. Plaintiff made sure that the officer was aware that the previous two disciplinary shots did not have BOP oversight or involvement and were unlawful. Plaintiff told Officer Cruz about the retaliation occurring at MTC and why it was occurring. Plaintiff was given enhanced discipline by Officer Cruz based on MTC's first two disciplinary sanctions. Plaintiff alleges that this rendered Officer Cruz's findings invalid. Officer Cruz placed Plaintiff into disciplinary segregation for seven days and took away 27 days of good-time credit. Officer Cruz made no allowance for any of the segregation already served by Plaintiff.

On April 18, 2016, Plaintiff was summoned by J. Bernal after he had finished his disciplinary segregation. Plaintiff was told that he was being refused camp status and was being transferred to a higher security facility as punishment. Plaintiff was kept in segregation an additional seven days because Plaintiff allegedly was a threat to institutional security.

At all times while in the SHU, Plaintiff alleges that he was engaged in active civil litigation and was trying to file motions in his criminal case. Defendants' refusal to allow legal access, legal material deliveries or attorney phone calls was a factor in Plaintiff's inability to conduct legal research, respond to the court, or seek replacement counsel in his Ninth Circuit appeal.

Plaintiff alleges that he is now housed in a federal prison with much more dangerous prisoners.

Plaintiff also alleges that during his stay at Taft, Defendant Dunham violated Plaintiff's religious garden and stole the Asatru group's firewood, which was a scarce item at Taft. The incident allegedly was covered by D. Hunt's refusal to respond to staff correspondence and Plaintiff was blocked from pursuing a grievance. Plaintiff also was refused proper bedding for his medical conditions. After months of pain, the SHU supervisor, Sgt. Yoder, gave Plaintiff a new mattress. Plaintiff alleges that MTC medical staff acted with deliberate indifference to his known condition and actively blocked any request for therapeutic bedding.

Plaintiff further alleges that he was denied religious access to smoking tobacco, his religious garden was uprooted, and Defendant Dunham refused to allow Plaintiff to observe his designated religious worship day. Plaintiff was not allowed religious items that were a part of his faith and not allowed any opportunity to utilize existing BOP policy to introduce unfamiliar religious practices. Plaintiff was denied a remedy and told that his issues did not concern the BOP.

Plaintiff forwards the following causes of action: (1) a *Bivens* action for denial of his constitutional rights to access the courts, legal materials, library access and legal calls; (2) conspiracy to interfere with his civil rights in violation of 42 U.S.C. §§ 1985 and 1986; (3) violation of the Religious Land Use and Institutionalized Persons Act and First Amendment

freedom of religion; (4) violation of his medical privacy and HIPAA; (5) intentional infliction of emotional distress); (6) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (7) tortious interference with business expectancy; (8) violation of the First and Eighth Amendments and intentional infliction of emotional distress; (9) unlawful detention, false imprisonment, and/or kidnapping; (10) retaliation in violation of the First Amendment; (11) denial of equal protection and equal access to medical care; (12) retaliatory forced labor in violation of the Thirteenth Amendment; and (13) common law fraud.

### III. Discussion

#### A. Federal Claims Against MTC and Its Employees

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers for alleged violation of a citizen's rights under the Fourth Amendment. 403 U.S. at 397. To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause). However, the Court has refused to extend liability for constitutional violations to federal agencies or private corporations operating federal prisons. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69, 74, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001). In other words, the Supreme Court has determined that the implied right of action recognized in *Bivens* does not extend to allow recovery against a private corporation operating under contract with the Bureau of Prisons. *See Minneci v. Pollard*, 565 U.S. 118, 132 S. Ct. 617, 181 L. Ed. 2d 606 (2012).

This deficiency cannot be cured by amendment, and thus the Court will recommend that Plaintiff's federal constitutional claims against Defendants MTC, American Zurich Insurance Company, Scott Marquardt, Craig Apker, Dale Patrick, J. Bernal, D. Hunt, R. Dunham, Burnett Rucker, F. Luna, M. Friend, Georgina Puentes, J. Letterman, Lt. Craig, Lt. Sy, Major Manuz, B. Pait, C. Mann, Martin, D. Lane, A. Jones, Sgt. Adams, Stephanie Hicks, Laurie Watts, B. Morseth, Ralph Ehli, Steven Jenkins, M. Swanson, J. Bryant and Logan be dismissed without

leave to amend. This includes Plaintiff's constitutional claims for denial of access to the courts and legal materials, *Bivens* conspiracy, violation of the First and Eighth Amendments, violation of the Thirteenth Amendment and denial of equal protection.

### B. Constitutional Claims Against the Bureau of Prisons or Department of Justice

Plaintiff names the Bureau of Prisons and Department of Justice as defendants. Plaintiff may not pursue a claim against a federal agency under *Bivens*. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994); *see also Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008) ("no Bivens-like cause of action is available against federal agencies or federal agents sued in their official capacities").

### C. Constitutional Claims Against Bureau of Prisons Personnel

As indicated above, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis*, 442 U.S. 228 (Fifth Amendment gender-discrimination); *Carlson*, 446 U.S. 14 (Eighth Amendment Cruel and Unusual Punishments Clause). The Supreme Court also has recently made clear that "expanding the *Bivens* remedy is now a disfavored judicial activity," and it has therefore "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (citations omitted). Because the Court finds that Plaintiff's remaining constitutional claims, if any, against BOP personnel may not proceed in this *Bivens* action, including claims against supervisory personnel and Plaintiff's habeas claims, it is not necessary for the Court to engage in an extended analysis as to whether to extend a *Bivens* remedy in this case to Plaintiff's claims against BOP personnel.

#### 1. Supervisory Liability

To the extent Plaintiff seeks to impose supervisory liability against BOP employees, including Defendants Benson, Nygren, Jones, Mitchell, Kane and Lynch, he may not do so. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Iqbal*, 556 U.S. at 676. Because vicarious liability is inapplicable to *Bivens* suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions has violated the Constitution. *Id.* Plaintiff has not adequately alleged that any of these supervisory officials engaged in individual actions that violated the Constitution.

### 2. Disciplinary Proceedings - Habeas

The crux of Plaintiff's complaint appears to be the disciplinary "shots" and SHU placement by MTC employees, along with the disciplinary findings of the BOP Hearing Officer, Defendant Cruz, all of which resulted in a loss of good-time credits. Plaintiff's claim for relief, if any, lies in habeas, not a civil rights action.

Generally, prisoners may not challenge the fact or duration of their confinement in a § 1983 action or under *Bivens*, and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the *Heck* bar, this exception bars suits by prisoners that "seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of . . . custody." *Wilkinson*, 544 U.S. at 81 (emphasis in original); *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (precluding § 1983 claims which, if successful, "would necessarily imply the invalidity" of an inmate's conviction or sentence). The *Heck* bar applies not only to claims under section 1983, but also to *Bivens* and FTCA claims. *See Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996); *Erlin v. United States*, 364 F.3d 1127, 1132 (9th Cir. 2004). As such, a prisoner's § 1983 action or claim under *Bivens* "is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82 (emphasis in original). The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997).

### D. Conspiracy – 42 U.S.C. §§ 1985, 1986

A claim under section 1985 must allege specific facts to support the allegation that

defendants conspired together. *Karim–Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. *Id.; Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1991). "A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim-Panahi*, 839 F. 2d at 626.

Plaintiff's amended complaint contains only conclusory allegations that any BOP defendants, including the Warden at Lompoc, engaged in a conspiracy. Plaintiff fails to allege any specific facts to support a conspiracy claim or any agreement of the alleged conspirators to deprive him of his rights. Accordingly, Plaintiff fails to state a section 1985 claim. In the absence of any such claim, Plaintiff also fails to state a section 1986 claim.

### E. Religious Land Use and Institutionalized Persons Act ("RLUIPA")

Although the provisions of RLUIPA, which "provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . .' " *Hartmann v. Cal. Dep't of Corrs. & Rehab.*, 707 F.3d 1114, 1124 (9th Cir. 2013), may permit a claim for injunctive relief, any such request by Plaintiff is now moot upon his transfer from Taft Correctional Institute. Transfer to another prison renders a request for injunctive relief moot absent some evidence of an expectation of being transferred back. *Pinson v. Prieto*, No. ED CV 10-811-PSG (SP), 2012 WL 7006131, at *6 (C.D. Cal. July 2, 2012) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402–03, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991)), report and recommendation adopted, No. ED CV 10-811-PSG SP, 2013 WL 427108 (C.D. Cal. Feb. 1, 2013). Further, RLUIPA does not authorize an award of damages against government officials in their official or individual capacities. *Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 1663, 179 L. Ed. 2d 700 (2011). Accordingly, Plaintiff may not maintain a claim for injunctive relief or damages under RLUIPA.

### F. Federal Tort Claims Act ("FTCA")

The United States is the only proper defendant in a FTCA action. *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995) (citing *Woods v. United States*, 720 F.2d 1451, 1452 n.1 (9th Cir. 1983)). However, a suit may not be instituted against the United States under the FTCA

unless the claim is first presented to the appropriate federal agency and one of the following conditions is met: the claim is finally denied, or six months have passed without a final resolution having been made. 28 U.S.C. § 2675(a). The claim presentation requirement is a jurisdictional prerequisite to bringing suit and must be affirmatively alleged in the complaint. *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir. 1980). Plaintiff has not alleged compliance with the FTCA.

### G. Racketeer Influenced and Corrupt Organizations Act ("RICO")

Plaintiff also appears to assert claims against defendants under RICO. "To state a civil RICO claim, plaintiff[ ] must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.' " *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quoting 18 U.S.C. § 1964(c)). To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. *Id.* Plaintiff has not adequately alleged a violation of RICO against private prison staff, and he has not demonstrated proof of concrete financial loss. That Plaintiff's civil action against Heritage Financial was dismissed on appeal is not sufficient as there is no indication that Plaintiff would have prevailed in that action.

### H. Health Insurance Portability and Accountability Act ("HIPAA")

"HIPAA itself does not provide for a private right of action." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007). Accordingly, Plaintiff cannot state a claim against any defendant based on an asserted violation of HIPAA.

### I. State Law Claims

To the extent Plaintiff is attempting to assert state law claims against the private prison staff, the Court will recommend that supplemental jurisdiction be declined and that these claims be dismissed.

Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed

before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. As discussed above, Plaintiff has not stated a cognizable claim for relief under federal law. Thus, Plaintiff's state law claims should be dismissed from this action.

**IV.     Conclusion and Recommendation**

Plaintiff's complaint fails to state a cognizable claim for relief under federal law. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies of his complaint, and further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY RECOMMENDS that:

1. Plaintiff's federal claims be dismissed for failure to state a claim upon which relief may be granted; and
2. Plaintiff's state law claims, if any, be dismissed.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 17, 2018**            /s/ *Barbara A. McAuliffe*
                                      UNITED STATES MAGISTRATE JUDGE

14